## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Michael Boylan,** | |
| *Plaintiff,* | **03-CV-4555 (WJM)** |
| **v.** | **OPINION** |
| **New Jersey Department of Corrections, Sergeant Lisa Easley, and Mary Cupo-Cruz,** | |
| *Defendants.* | |

Richard S. Panitch
Panitch & Rachinsky, LLC
330 Milltown Road, Suite W-11
East Brunswick, NJ 08816
      (*Attorneys for Plaintiff*)

Nicole S. Morgan, Deputy Attorney General
Department of Corrections
R.J. Hughes Justice Complex
P.O. Box 112
Trenton, NJ 08625
      (*Attorneys for Defendants Gaon and Koch*)


**WILLIAM J. MARTINI, U.S.D.J.**:

      This matter comes before the Court on Defendant New Jersey Department of Corrections'

motion for summary judgment.  There was no oral argument.  Fed. R. Civ. P. 78.  For the reasons

set forth below, the motion is **GRANTED**.


**Factual Background**

      Plaintiff Boylan, a white male, began his career as a Senior Corrections Officer at the

New Jersey Department of Corrections ("DOC" or "Defendant") in January 1994.  In July 1999,

he took the Sergeant's Examination and passed.  In or about October 2002, he interviewed for a

Sergeant position at the Adult Diagnostic and Treatment Center ("ADTC") and, allegedly, was

offered the job.  Shortly thereafter, Plaintiff claims he told Defendant he would accept the

position.  However, when Defendant released its list of new officers at ADTC in November

2002, Plaintiff's name did not appear.  Instead, the position went to a black male officer, Don

Benson, who allegedly scored lower than Plaintiff on the Sergeant's Examination.

In response to his inquiries, the Department of Personnel ("DOP") stated it did not

promote Plaintiff because of two sexual harassment charges pending in his file.  Indeed, the

record shows that a female officer, Lisa Easley, had previously filed such complaints against

Plaintiff, and at the time of his interview, one of these complaints was pending before the Office

of Administrative Law, and another was pending before the Merit System Board.[1]

Plaintiff subsequently filed a complaint with the EEOC and received a "Notice of Right

to Sue" on July 1, 2003.  On September 19, 2003, he filed the instant Complaint against

Defendants DOC, Sergeant Easley, and EED Director Mary Cupo-Cruz.  In it, he alleged that

DOC discriminated against him on the basis of race and gender in denying his promotion.  He

further claimed that all Defendants collectively engaged in a pattern of retaliation against him for

several EED and EEOC complaints he had filed over the years alleging discriminatory treatment.

---

[1] Charges such as these are first brought before the Equal Employment Division (EED).
A party may appeal the decision of the EED to the Merit System Board.  If the Merit System
Board finds a sufficient basis for doing so, it may refer the case to the Office of Administrative
Law for additional hearings.

In August 2004, the Court granted in part Defendants' motion to dismiss.[2]  In February 2006, the parties entered into a stipulation of dismissal, with prejudice, as to Defendants Easley and Cupo-Cruz.  DOC, the sole remaining Defendant, has now filed for summary judgment as to the two remaining claims, Counts One and Six, which allege discrimination and retaliation in violation of Title VII.[3]

**Standard of Review**

Summary judgment eliminates unfounded claims without resorting to a costly and lengthy trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  However, a court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The burden of showing that no genuine issue of material fact exists rests initially on the moving party.  *Celotex*, 477 U.S. at 323.  A litigant may discharge this burden by exposing "the absence of evidence to support the nonmoving party's case."  *Id.* at 325.  In evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587

---

[2] The Court partially dismissed Counts One, Two, Three, and Six, and dismissed Counts Four and Five in their entirety.

[3] The Court notes that Plaintiff does not specify in his Complaint under what law he intended to bring Count Six, which simply alleges "retaliation."  However, Plaintiff separately alleged retaliation under the New Jersey Law Against Discrimination ("LAD") in Count Three of the Complaint.  And since the LAD would preclude a common law claim for retaliation, *see Palatnik v. The Home Depot, Inc.*, No. Civ. 04-1229, 2006 WL 680981, at *21 (D.N.J. 2006), the Court reads Count Six as alleging retaliation under Title VII.

(1986); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).

Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The substantive law determines which facts are material. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* No issue for trial exists unless the nonmoving party can demonstrate sufficient evidence favoring it such that a reasonable jury could return a verdict in that party's favor. *Id.* at 249.

**Discrimination**

A plaintiff alleging unlawful discrimination must satisfy the test set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). This is done by showing that (1) he is a member of a protected class, (2) he was subject to an adverse employment action, and (3) similarly situated members of other racial classes were treated more favorably. *Id.* In the Third Circuit, a white male plaintiff alleging racial and gender discrimination must also present "sufficient evidence to allow a reasonable fact finder to conclude (given the totality of the circumstances) that the defendant treated plaintiff 'less favorably than others because of [his] race, color, religion, sex, or national origin.'" *Iadimarco v. Runyon*, 190 F.3d 151, 163 (3d Cir. 1999). If the plaintiff can satisfy these tests, the defendant must then "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. The burden then shifts back to the plaintiff to present evidence that the articulated reason is

pretextual in nature.  *Id.*

The adverse employment action that forms the basis of the suit is the denial of Plaintiff's promotion.[4]  The Court assumes, for the purposes of this motion, that Plaintiff has met his initial burden of showing discrimination under the *McDonnell* and *Iadimarco* tests.  The burden then shifts to Defendant, which contends it denied the promotion not out of discriminatory animus, but because Plaintiff had two sexual harassment charges pending against him and because DOC policy precluded promotions in such situations.  In response, Plaintiff claims this explanation is nothing more than pretext.  The Court finds to the contrary.

Under New Jersey law, an appointing authority promoting a public employee may choose from any of the top three interested eligible candidates on a promotional list.  *See* N.J. Stat. Ann. § 11A:4-8 (2006); N.J. Admin. Code § 4A:4-4.8(a)3 (2006).  The appointing authority has discretion to promote from the three candidates taking into consideration the candidate's history, including disciplinary history, and qualifications.  *Id.*  The record shows that, under these procedures, Defendant had ample reason not to promote Plaintiff.  As previously stated, Plaintiff had two sexual harassment charges pending against him.  In the first complaint, Easley accused Plaintiff of touching her buttocks and then stating "You know you like it."  (Morgan Certif. Exh. F.)  In the second, she claimed he approached her and exclaimed, "Bite me."  (Morgan Certif. Exh. G.)  Although Plaintiff is correct that the EED initially found insufficient evidence to support the charges, in both cases, the Merit System Board found on appeal that there were

---

[4] Although Plaintiff cites numerous instances of allegedly discriminatory disciplinary practices within DOC, it appears from his brief that he cites to these incidents not as adverse employment actions, but rather to fulfill the *Iadimarco* "sufficient evidence" requirement for showing reverse discrimination.  (Pl.'s Opp'n Br. 10-12.)

"material and controlling" disputes of fact so as to warrant additional hearings.  (Morgan Certif. Exhs. F, G.)  Based on these determinations, the charges were referred to the Office of Administrative Law for further proceedings.[5]  These charges were of a sufficiently serious nature such that a finding in Easley's favor could have resulted in significant disciplinary action against Plaintiff.  It was not at all unreasonable for Defendant to refrain from promoting Plaintiff until it knew the outcome of the proceedings.  Given these facts, Plaintiff cannot demonstrate that Defendant's decision not to promote him was based on illegitimate, pretextual grounds.

Plaintiff counters that, if true that the relevant laws and policies prevented his promotion, Officer Benson, who ultimately received the promotion, similarly should have been bypassed. According to Plaintiff, Officer Benson had previously received a "Time and Attendance" charge for falling asleep while on duty.  He also claims that DOC had a strict policy of not promoting those with such charges in their file.  Thus, the argument goes, DOC's promotion of Benson despite this policy belies the truth of its purported rationale for denying Plaintiff's promotion.

Unfortunately, other than his own statements and testimony, Plaintiff has submitted no supporting evidence to demonstrate either (1) that DOC indeed had a policy prohibiting promotions of those with "Time and Attendance" charges in their file or (2) that Benson had previously received such a charge.[6]  Without such evidence, which the Court believes should

---

[5] Although the Court could not determine the precise procedural stage of the second complaint at the time Plaintiff applied for the ADTC promotion, it is clear it had not been fully adjudicated and remained a "pending" action.

[6] Although Plaintiff submitted a 1998 Office of Administrative Law decision recommending a 30-day suspension for Benson for sleeping while on duty, (Pl.'s Exh. K), this decision does not substantiate the claim that Benson received a "Time and Attendance" sanction or that such a sanction should have prevented his promotion.

have been readily available through document requests or depositions, Plaintiff cannot provide support for his allegations.[7]  More importantly, even if Plaintiff had produced such evidence, there is a distinction between a past, adjudicated disciplinary charge, and one currently pending where the outcome remains unknown.  That Defendant might promote Benson, who had long ago completed his disciplinary sentence,[8] over Plaintiff, who faced considerable disciplinary sanction over pending allegations, is not unreasonable – and it certainly does not prove discriminatory animus.

Finally, the Court will note that Plaintiff's disciplinary record provided yet an additional basis for bypassing his promotion to Sergeant.  Between 1997 and 2001, he was disciplined five times for violations of procedures and regulations involving safety and security, discourtesy to the public, visitors, inmates, residents or clients, and conduct unbecoming a public employee.  Following one incident, Plaintiff was banned from delivering mail to the post office.  It appears one postal employee overheard him saying he planned to bring several guns into the post office the following week.  (Morgan Certif. Exh. N.)  Under DOC policies and procedures, these disciplinary sanctions would have sufficed in and of themselves to prevent Plaintiff's promotion. (Morgan Certif. Exh. I.)

---

[7] Indeed, the Court is perplexed by the dearth of document discovery that seems to have taken place during the course of this litigation.  In opposing this motion for summary judgment, Plaintiff submitted no policy statements, disciplinary records, examination results, or other document that could have helped to substantiate his claims.  For instance, although Plaintiff alleges Benson scored lower than him on the Sergeant's Examination, he put forth no evidence to back this claim.  The Court can only assume that such evidence does not exist or did not assist Plaintiff's cause.

[8] The charge against Benson occurred four years before Benson applied for the ADTC promotion.  The charges against Plaintiff, on the other hand, were present and pending.

In short, in light of the overwhelming evidence of Defendant's nondiscriminatory basis for bypassing Plaintiff for promotion to Sergeant, Court finds that Plaintiff cannot meet his burden under the *McDonnell Douglas* and *Iadimarco* tests and grants summary judgment for Defendant as to this ground.

**Retaliation**

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) he engaged in a protected employee activity, (2) the employer took an adverse employment action after or contemporaneous with the protected activity, and (3) a causal link exists between the protected activity and the adverse action. *Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir. 2001). Once he establishes a prima facie case of retaliation, the burden of production shifts to the defendant to articulate some legitimate non-retaliatory reason for the adverse action. *Woodson v. Scott Paper Co.,* 109 F.3d 913, 920 & n. 2 (3d Cir.1997). Finally, the burden shifts back to the plaintiff to show that the defendant's proffered reasons are purely pretextual. *Id.*

The crux of Plaintiff's retaliation claim is that Defendant denied his promotion in retaliation for numerous EEOC and EED complaints he had filed over the years alleging "reverse discrimination" within Defendant. The Court, for purposes of this motion, assumes arguendo that Plaintiff has met his initial burden of showing a prima facie case of retaliation in the denial of his promotion. However, because the Court found above that Plaintiff cannot establish the pretextual nature of Defendant's reason for denying the promotion, the Court grants summary

judgment for Defendant as to this ground as well.[9]

**Conclusion**

For the reasons stated above, Defendant's motion for summary judgment is **GRANTED**

and this case is **DISMISSED**.  An appropriate Order follows.

s/William J. Martini
**William J. Martini**

---

[9] The Court also notes that, in addition to the denial of his promotion, Plaintiff claims he suffered "adverse employment action" when Defendant forced him to drive an unsafe vehicle. (Pl. Opp. B. 18.)  Because Plaintiff made no such allegation in his Complaint, the Court declines to consider this post hoc allegation.